IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 21-cv-02851-RMR-NRN

VICTOR MANUEL TREVIZO GONZALEZ,

Plaintiff,

v.

KODY BRUNNEMER, in his individual and official capacity;
KEVIN DOUGLAS, in his individual and official capacity;
CITY OF GREELEY, COLORADO, a municipality,

Defendants.

---

## REPORT AND RECOMMENDATION ON
## DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT
## (Dkt. #37)

---

**N. Reid Neureiter**
**United States Magistrate Judge**

This case is before the Court pursuant to an Order (Dkt. #38) issued by Judge

Regina M. Rodriguez referring Defendants Kody Brunnemer, Kevin Douglas, and the

Greeley Police Department's ("GPD" or the "Department") (collectively, "Defendants")

Motion to Dismiss Second Amended Complaint ("Motion to Dismiss"). (Dkt. #37.) During

a hearing on October 11, 2023, the Court converted the Motion to Dismiss (Dkt. #37) to

a Motion for Summary Judgment for the limited purpose of ensuring that the Court could

review the video of the disputed events. (*See* Dkt. #44.) Plaintiff Victor Manuel Trevizo

Gonzalez filed a response (Dkt. #48) and Defendants filed a reply.[1] (Dkt. #50.) The

---

[1] An affidavit and certain exhibits were struck from Defendants' reply brief. (*See* Dkt. #59.) The Court did not strike the video of the incident and evidence of Plaintiff's criminal conviction. (*Id.*)

Court then allowed supplemental briefing on the application of *Heck v. Humphrey*, 512 U.S. 477 (1994). (*See* Dkt. ##60, 61, & 66.)

The Court has taken judicial notice of the Court's file, considered the applicable Federal Rules of Civil Procedure and case law. As set forth below, the Court **RECOMMENDS** that the motion (Dkt. #37) be **GRANTED IN PART** and **DENIED IN PART**.

<u>**I. LEGAL STANDARDS**</u>

**a. Rule 12(b)(6)**

Although the Court converted the Motion to Dismiss to one for summary judgment, it was for the very limited purpose of viewing the contents of Defendant Brunnemer's body-worn camera video recording, which was not referred to in the Second Amended Complaint but the authenticity of which is not challenged by either side. *Cf. Scott v. Harris*, 550 U.S. 372, 379 (2007) (in a case involving allegations of excessive force in connection with a high-speed chase, the Supreme Court considered in connection with a motion for summary judgment the contents of a videotape "capturing the events in question" for which there were no allegations or indications of doctoring or tampering in any way). Thus, as Plaintiff suggests, the Court will otherwise apply the Rule 12(b)(6) standard and, when reviewing the video recording, the Court will "view[ ] the video in the light most favorable to Plaintiff, except where the video 'blatantly contradicts' Plaintiff's version of the events." *Est. of Ronquillo by & through Est. of Sanchez v. City & Cnty. of Denver*, No. 16-cv-01664-CMA-KMT, 2016 WL 10843787, at *2 (D. Colo. Nov. 17, 2016) (citing *Thomas v. Durastanti*, 607 F.3d 655, 672 (10th Cir. 2010) (on a motion for summary judgment, a court may reject a plaintiff's version of the

events when video evidence "blatantly contradicts" that version), and *Choate v. City of Gardner, Kan.*, No. 16-2118-JWL, 2016 WL 2958464, at *3 (D. Kan. May 23, 2016) (applying this standard to a motion to dismiss)), *aff'd*, 720 F. App'x 434 (10th Cir. 2017)).

Rule 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall*, 935 F.2d at 1198. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679–81. Second, the court considers the factual allegations "to determine if they plausibly suggest an entitlement to

relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 679.

However, the Court need not accept conclusory allegations without supporting factual averments. *S. Disposal, Inc., v. Tex. Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

In evaluating a Rule 12(b)(6) motion to dismiss, the Court may consider documents incorporated by reference, documents referred to in the complaint that are central to the claims, and matters of which a court may take judicial notice. *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). Publicly filed court records are subject to judicial notice. *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1172 (10th Cir. 1979); *United States v. Ahidley*, 486 F.3d 1184, 1192 n.5 (10th Cir. 2007); *Trusdale v. Bell*, 85 F. App'x 691, 693 (10th Cir. 2003).

**b. Qualified Immunity**

In suits brought against officials in their individual capacities, officials may raise the defense of qualified immunity. *Kentucky v. Graham*, 473 U.S. 159, 166– 67 (1985).

The doctrine of qualified immunity protects government officials from individual liability in the course of performing their duties so long as their conduct does not violate clearly established constitutional or statutory right*s. Washington v. Unified Gov't of Wyandotte Cnty.*, 847 F.3d 1192, 1197 (10th Cir. 2017). Once a defendant has asserted a defense of qualified immunity, the burden shifts to the plaintiff who must establish that (1) the defendant violated a right, and (2) the right was clearly established. *Puller v. Baca*, 781 F.3d 1190, 1196 (10th Cir. 2015). "In their discretion, courts are free to decide which prong to address first in light of the circumstances of the particular case at hand." *Weise v. Casper*, 593 F.3d 1163, 1167 (10th Cir. 2010) (quotation omitted).

A qualified immunity defense may be asserted in a Rule 12(b)(6) motion, although a motion for summary judgment under Rule 56 is the more common vehicle for asserting such defenses. *See Peterson v. Jensen*, 371 F.3d 1199, 1202 (10th Cir. 2004). In asserting a qualified immunity defense in their Rule 12(b)(6) motion, the Officer Defendants have set a higher bar for themselves; "a district court should not dismiss a complaint for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Jensen*, 371 F.3d at 1202 (internal quotations and citations omitted). In sum, asserting a defense of qualified immunity shifts the burden to the plaintiff, but doing so in the context of a 12(b)(6) motion materially lessens that burden.

## BACKGROUND[2]

Plaintiff is a 55-year-old Hispanic, Spanish-speaking man who speaks and understands very little English. (Dkt. #35 ¶¶ 14–15.) On February 4, 2021, just before 10:00 p.m., Plaintiff and another Hispanic man were standing outside of a residential home in Greeley, Colorado. (*Id.* ¶ 15.) Neither man was engaged in criminal activity, nor had there been reports of suspicious activity in the immediate area on that night. (*Id.* ¶¶ 16–17.)

Defendant Brunnemer, a Greeley Police Officer, was on patrol and observed the two men standing outside the home. (*Id.* ¶ 18.) Defendant Brunnemer turned his marked police vehicle into the driveway and accelerated up to where the two men stood, his headlights shining directly on them. (*Id.* ¶ 20–21.)

Defendant Brunnemer, wearing his full police uniform and his firearm, exited the vehicle and began interrogating Plaintiff and the other man as to why they were there. (*Id.* ¶¶ 21–22.) Despite having no reason to believe that Plaintiff or the other man had committed or were about to commit a crime, Defendant Brunnemer ordered both men to "hang out right here" and "don't move" while he returned to his patrol vehicle. (*Id.* ¶¶ 23–24, 26.) In the arrest affidavit, Officer Brunnemer reported that Plaintiff was not free to leave at this point. (*Id.* ¶ 25.)

During Defendant Brunnemer's questioning of Plaintiff, it was apparent that Plaintiff's English was limited, as he had difficulty understanding Defendant

---

[2] Unless otherwise noted, all allegations are taken from Plaintiff's Second Amended Complaint (Dkt. #35) and are presumed to be true for the purposes of this motion to dismiss. All citations to docketed materials are to the page number in the CM/ECF header, which sometimes differs from a document's internal pagination.

Brunnemer's basic request for his date of birth. (*Id.* ¶¶ 29–30.) While Defendant Brunnemer attempted to ask Plaintiff questions in Spanish, his commands for the men to stay put were in English. (*Id.* ¶ 31.) Plaintiff had not acted in a threatening or aggressive manner during this encounter. (*Id.* ¶ 33.)

     While Defendant Brunnemer was in his patrol car, Plaintiff began to ride slowly down the driveway on his bicycle and into the street. (*Id.* ¶ 32.) Defendant Brunnemer gave chase, shouting commands in English. (*Id.* ¶ 34.) Defendant Brunnemer grabbed Plaintiff's jacket and pulled him off the moving bicycle and onto the pavement, causing visible lacerations to Plaintiff's face. (*Id.* ¶ 35.) Plaintiff did not resist Defendant Brunnemer—he immediately said, "okay, okay," when Defendant Brunnemer grabbed his jacket, and did not attempt to get up when he was pulled to the ground. (*Id.* ¶ 36.)

     Defendant Douglas, another Greeley Police Officer, arrived on scene in his patrol vehicle and rushed over to where Defendant Brunnemer had pinned an unresisting Plaintiff to the ground with his hands behind his back. (*Id.* ¶ 37–38.) Defendant Douglas twisted Plaintiff's left hand and wrist using both hands and he and Defendant Brunnemer pried Plaintiff's arms further back through to lock his hands in restraints. (*Id.* ¶¶ 39–40.) Plaintiff heard something pop, cried out that his finger felt broken, and immediately complained of pain to his left wrist and middle finger. (*Id.* ¶ 40.) Plaintiff suffered lacerations to his face and permanent injury to his left wrist and left middle finger in the incident. (*Id.* ¶ 41.)

### III. ANALYSIS

Plaintiff asserts two claims for relief pursuant to 42 U.S.C. § 1983.[3] The first claim is a Fourth Amendment unreasonable seizure claim asserted against Defendant Brunnemer in his individual and official capacities and against Defendant City of Greeley. The second claim is a Fourth Amendment excessive force claim brought against all Defendants. Defendants seeks to dismiss both. The Court will address the claims against the individual officers first, and then the municipal liability claim.

**a. Unreasonable Seizure**

    **1. *Heck v. Humphrey***

Defendants argues that Plaintiff's Fourth Amendment unreasonable seizure claim is barred by *Heck v. Humphrey*.[4] The Court disagrees.

*Heck* "prohibits a plaintiff from attacking the validity of a criminal conviction under 42 U.S.C. § 1983 unless that conviction has been 'reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.'" *Butler v. Butierres*, 58 F. App'x 458, 459 (10th Cir. 2003) (quoting *Heck*, 512 U.S. at 486–87). In evaluating whether a claim is barred by *Heck*, the Court must consider "whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed

---

[3] Section 1983 "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights." *Conn v. Gabbert*, 526 U.S. 286, 290 (1999). "[T]he purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992).

[4] The parties agree that *Heck* does not preclude Plaintiff's excessive force claim.

unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Heck*, 512 U.S. at 486–87. "The starting point for the application of *Heck* then, is the existence of an underlying conviction or sentence that is tied to the conduct alleged in the § 1983 action. In other words, a § 1983 action implicates *Heck* only as it relates to the conviction that it would be directly invalidating. *Butler v. Compton*, 482 F.3d 1277, 1279 (10th Cir. 2007).

The "key inquiry" is whether a § 1983 plaintiff's successful prosecution of his civil rights claim would necessarily invalidate his underlying conviction. *Strepka v. Jonsgaard*, No. 10-cv-00320-PAB-KMT, 2010 WL 4932723, at *4 (D. Colo. Nov. 8, 2010). Because Heck is intended to foreclose collateral attacks, "the starting point for the application of *Heck* [] is the existence of an underlying conviction or sentence that is tied to the conduct alleged in the § 1983 action." *Butler*, 482 F.3d at 1279.

Here, Plaintiff pled guilty to criminal possession of a financial device under Colo. Rev. Stat. § 18-5-903(1) and (2)(b) and waived a factual basis for the conviction. (*See* Dkt. #60-3.) Two other charges were dismissed. (*Id.*) However, Plaintiff argues that while he was found in possession of several identification cards that did not belong to him, he did not possess any "financial devices." The video evidence supports this contention. Plaintiff was not charged with or convicted of possessing the identification documents. It appears that the possession of a financial device charge had no factual basis, but when the Plaintiff took his plea in the underlying criminal matter, he waived the factual basis for the charge to which he was pleading guilty. (*See* Dkt. #60 at 2 (citing the plea agreement).)

*Heck* acts to bar § 1983 claims of illegal search and seizure in the "'rare situation' in which 'all of the evidence obtained [to support the underlying conviction] . . . was the result of' an illegal search." *Garza v. Burnett*, 672 F.3d 1217, 1220 (10th Cir. 2012) (quoting *Trusdale v. Bell*, 85 F. App'x 691, 693 (10th Cir. 2003) (unpublished)). As the case is currently postured, the evidence obtained by Defendant Brunnemer as a result of the allegedly unconstitutional seizure (the identification cards) were not part of, and did not support, the underlying conviction for possession of a financial device. Thus, Plaintiff seeks damages under § 1983 "for using the wrong procedures, not for reaching the wrong result," and therefore his claim does not "necessarily imply the invalidity" of his convictions. *Heck*, 512 U.S. at 482–83. Success in this civil action on the claim of an unconstitutional search would not invalidate Plaintiff's criminal conviction.

Accordingly, at this stage, the Motion to Dismiss should be denied to the extent it seeks to dismiss Plaintiff's unreasonable seizure claim pursuant to *Heck*.

**2. The Merits of the Claim**

The Fourth Amendment guarantees citizens the right "to be secure in their persons . . . against unreasonable seizures." U.S. Const. amend. IV. A "seizure" for the purposes of the Fourth Amendment occurs when a government actor terminates one's freedom of movement through means intentionally applied. *Brower v. Cnty. of Inyo*, 489 U.S. 593, 596–97 (1989). Here, Plaintiff adequately alleges he was seized, so the question is whether he has alleged facts sufficient to show that the seizure was unreasonable.

The "ultimate touchstone" for analyzing the constitutionality of a seizure under the Fourth Amendment is reasonableness. *Brigham City v. Stuart*, 547 U.S. 398, 403

(2006). The reasonableness of a seizure depends on whether, objectively, the challenged action was justified under the circumstances. *Ashcroft v. al-Kidd*, 563 U.S. 731, 736 (2011); *United States v. Perdue*, 8 F.3d 1455, 1462 (10th Cir. 1993). The reasonableness inquiry "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989) (internal quotations omitted).

"An officer can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks probable cause." *Cortez v. McCauley*, 478 F.3d 1108, 1115 (10th Cir. 2007) (internal quotation marks and citation omitted). For an investigative detention to be found reasonable, the law enforcement officer's action must have been "justified at its inception" and "reasonably related in scope to the circumstances which justified the interference in the first place." *Terry v. Ohio*, 392 U.S. 1, 20 (1968). "Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause." *United States v. Tuter*, 240 F.3d 1292, 1296 n.2 (10th Cir. 2001) (quoting *Alabama v. White*, 496 U.S. 325, 330 (1990)). For an officer to have reasonable suspicion to seize an individual, the officer "must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Oliver v. Woods*, 209 F.3d 1179, 1186 (10th Cir. 2000). "Neither

'inarticulate hunches' nor 'unparticularized suspicion' will suffice to justify an investigatory detention." *Gallegos v. City of Colorado Springs*, 114 F.3d 1024, 1028 (10th Cir. 1997) (quoting *Terry*, 392 U.S. at 22, 27). Whether an officer had reasonable suspicion is based on the totality of the circumstances and officers may draw on their experience and specialized training to make inferences from and deductions about the cumulative information available to them. *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1206-07 (10th Cir. 2008). And because officers should not be required to take unnecessary risks in performing their duties, they are "authorized to take such steps as [are] reasonably necessary to protect their personal safety and to maintain the status quo during the course of a [*Terry*] stop. *Perdue*, 8 F.3d at 1462 (quoting U*nited States v. Hensley*, 469 U.S. 221, 235 (1985)). "An encounter between police and an individual which goes beyond the limits of a *Terry* stop, however, may be constitutionally justified only by probable cause or consent." *Id.*

Plaintiff has adequately alleged that Defendant Brunnemer's initial seizure was not justified at the inception and was therefore unconstitutional. Plaintiff alleges that he and his companion were not breaking any law or engaging in suspicious activity when Defendant Brunnemer pulled up to the residence. They were outside the front of the house, and Plaintiff appeared to be merely knocking on the door. Although Defendants argue that the property was vacant and there were prior reports of suspicious activity, the Court will not consider this evidence on a Rule 12(b)(6) motion. Nor, at this early stage, will the Court consider Defendant Brunnemer's statements made on the video after Plaintiff's arrest, as they are hearsay.

Moreover, Defendant Brunnemer cannot justify his seizure of Plaintiff by pointing out that his companion had a felony warrant. Except in "certain limited circumstances" not applicable here, the Fourth Amendment's "restraint on government conduct generally bars officials from undertaking a search or seizure absent *individualized* suspicion." *Chandler v. Miller,* 520 U.S. 305, 308 (1997) (emphasis added).

Of course, as the case proceeds, the Court does not foreclose the possibility that Defendants can produce admissible evidence showing that it was reasonable for Defendant Brunnemer to be suspicious of Plaintiff's presence outside the residence that night. But, at this stage, the Court must accept Plaintiff's allegations as true. And Plaintiff has sufficiently alleged that Defendant Brunnemer lacked a particularized and objective basis to detain him that night. The right to be free from a seizure lacking reasonable suspicion is clearly established. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1158 (10th Cir. 2008) ("In the context of an unlawful arrest our analysis is simple, for the law was and is unambiguous: a government official must have probable cause to arrest an individual.") (internal quotations omitted); *Romero v. Story*, 672 F.3d 880, 889 (10th Cir. 2012) ("A citizen has the constitutional right to walk away from a law enforcement officer who lacks probable cause or reasonable suspicion to detain or seize him or her."). Defendant Brunnemer is therefore not entitled to qualified immunity on Plaintiff's first claim at this stage of the litigation.

**b. Excessive Force**

In assessing an excessive force claim under the Fourth Amendment, "the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or

motivation." *Graham*, 490 U.S. at 397 (internal quotation marks omitted). The inquiry "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396. It must also "allow[ ] for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97. "An excessive force claim that includes a challenge to the manner or course of handcuffing requires the plaintiff to show both that the force used was more than reasonably necessary and some non-de minimis actual injury." *Donahue v. Wihongi*, 948 F.3d 1177, 1196 (10th Cir. 2020) (internal quotation marks omitted).

In this case, Plaintiff alleges that Defendant Brunnemer "grabbed hold of the 55-year-old [Plaintiff]'s jacket and forcefully pulled him over the moving bicycle and down onto the pavement," despite the fact that Plaintiff had not engaged in any aggressive or threatening behavior and was slowly riding his bicycle away. When he was on the ground, Plaintiff did not resist, and his hands were behind his back. Nevertheless, Defendant Brunnemer pinned him to the ground and then he and Defendant Douglas each grabbed an arm and twisted and pried them back to handcuff him. Plaintiff heard something pop and stated his finger felt broken.

Taken together, and considering the relevant *Graham* factors, Plaintiff's allegations state a Fourth Amendment excessive force claim. First, as discussed above, Plaintiff alleges that there was *no* crime at issue and, to the extent that he was

attempting to flee it was from an unlawful arrest. However, in an excessive force inquiry, the Court must ask "whether the force used would have been reasonably necessary *if the arrest or the detention were warranted.*" *Morris v. Noe*, 672 F.3d 1185, 1195 (10th Cir. 2012) (emphasis in original) (citation omitted). The Court agrees with Plaintiff that the offenses Defendants cite as justifications for handcuffing him (resisting arrest, obstruction, trespassing) are relatively minor and "the amount of force used should [be] reduced accordingly." *Fogarty*, 523 F.3d at 1160. This factor weighs in Plaintiff's favor.

Second, Plaintiff posed little immediate threat to the safety of the officers. Plaintiff was not acting in a threatening manner towards Defendant Brunnemer. He did not have a weapon. He stayed where he was commanded when Defendant Brunnemer went back to his patrol car. Moreover, Plaintiff told Defendant Brunnemer that he did not speak English well, and Defendant Brunnemer's commands to him were in English. And, while it may affect the next factor, Plaintiff was trying to get *away from* Defendant Brunnemer when he got on his bicycle. When he was pulled of the bicycle, Plaintiff alleges that he did not resist and instead attempted to calm Defendant Brunnemer down verbally. And by the time Defendant Douglas got involved, his hands were already behind his back. This factor weighs in Plaintiff's favor.

Under the third *Graham* factor, Plaintiff was attempting to flee, and this must be weighed against him. However, the Court again notes that it was via bicycle, and so he posed little danger of harm to the officers or others. Furthermore, Defendant Brunnemer was able to quickly run him down and, once he was taken off the bicycle, Plaintiff did not offer further resistance. "A suspect's initial resistance does not justify the continuation of force once the resistance ceases." *McCoy v. Meyers*, 887 F.3d 1034,

1051 (10th Cir. 2018). Plaintiff alleges that once he was pinned to ground, with his hands behind his back and firmly under Defendant Brunnemer's control, Defendant Douglas "lunged" onto his back and, using both hands, twisted Plaintiff's left arm.

The video footage of the takedown and cuffing is dark and shaky. However, it does appear to show that Defendant Brunnemer had pinned Plaintiff to the ground for at least 15 seconds before Defendant Douglas arrives to assist with the handcuffing. Considering the applicable factors, and viewing the facts in the light most favorable to Plaintiff, the Court finds that he states an excessive force claim against both Defendants.

The Court therefore moves to the second element of qualified immunity: whether the right was clearly established. The right was clearly established if it would have been clear to a reasonable officer that the takedown and handcuffing was unlawful under the circumstances. *Courtney v. Okla. ex rel. Dep't of Pub. Safety*, 722 F.3d 1216, 1222 (10th Cir. 2013). "The difficult part of this inquiry is identifying the level of generality at which the constitutional right must be 'clearly established.'" *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007). For excessive force claims, there is "a sliding scale: 'The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation.'" *Morris v. Noe,* 672 F.3d 1185, 1196 (10th Cir. 2012) (quoting *Pierce v. Gilchrist,* 359 F.3d 1279, 1298 (10th Cir. 2004)). Thus, "a plaintiff can establish that his right was clearly established if application of the *Graham* factors alone would put a reasonable officer on notice that his actions were unconstitutional." *Cook v. Peters*, 604 F. App'x 663, 667 (10th Cir. 2015).

"*Graham* establishes that force is least justified against nonviolent misdemeanants *who do not flee* or actively resist arrest." *Casey*, 509 F.3d at 1285 (emphasis added). The problem for Plaintiff is that he did flee, and he points to no case that would put a reasonable officer on notice that it would be unconstitutional to drag a fleeing individual off a bicycle and pin him to the ground. The cases he does cite, *Cook v. Peters* and *Long v. Fulmer*, 545 F. App'x 757 (10th Cir. 2013), do not involve individuals actively running or riding away from police. Instead, the plaintiffs in those cases merely "pulled away" from the arresting officers. The Court cannot agree with Plaintiff that "rolling away on his bicycle is analogous to the mild resistance in the above two cases."

The cases Plaintiff cites for the proposition that it is well-established that unduly tight handcuffing constitutes excessive force likewise do not involve a fleeing suspect. *See Mglej v. Gardner*, 974 F.3d 1151 (10th Cir. 2020); *Fisher v. City of Las Cruces*, 584 F.3d 888 (10th Cir. 2009); *Vondrak v. City of Las Cruces*, 535 F.3d 1198 (10th Cir. 2008).

Because it was not clearly established that pulling Plaintiff—who was fleeing from the officers—off his bicycle, pinning him to the ground, and handcuffing him, was objectively unreasonable, Defendants Brunnemer and Douglas are entitled to qualified immunity, and Plaintiff's excessive force claim should be dismissed.

**c. Municipal Liability**

Plaintiff asserts claims against both the GPD officers in their official capacities and the City of Greeley. "[A] section 1983 suit against a municipality and a suit against a municipal official acting in his or her official capacity are the same." *Stuart v. Jackson*,

24 F. App'x. 943, 956 (10th Cir. 2001) (quoting *Myers v. Okla. Cnty. Bd. of Cnty.*

*Comm'rs*, 151 F.3d 1313, 1316 n.2 (10th Cir. 1998)). Accordingly, where a plaintiff sues

both the municipality and municipal official in an official capacity under the same theory

of recovery, courts have dismissed the official capacity claim as "duplicative" or

"redundant" of the claim against the municipal entity. *See Leadholm v. City of*

*Commerce City*, No. 16-cv-02786-MEH, 2017 WL 1862313, at *5 (D. Colo. May 9,

2017). Thus, the official capacity claims against the individual Defendants should be

dismissed.

Turning to the claims against the City of Greeley, "[l]ocal governing bodies . . .

can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . .

. the action that is alleged to be unconstitutional implements or executes a policy

statement, ordinance, regulation, or decision officially adopted and promulgated by that

body's officers." *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690

(1978) (footnote omitted). To state a claim for municipal liability, a plaintiff must

plausibly allege the existence of a municipal policy or custom and a causal link between

the policy or custom and the injury alleged. *See Mocek v. City of Albuquerque*, 813 F.3d

912, 933 (10th Cir. 2015). He must also "show that the policy was enacted or

maintained with deliberate indifference to an almost inevitable constitutional injury."

*Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013). A

municipality can be liable under § 1983 only where the municipality itself causes the

constitutional violation at issue. *Monell*, 436 U.S. at 690–91. Thus, to prove a

municipality is liable under § 1983 for the acts of one of its employees, a plaintiff must

show (1) that a municipal employee committed a constitutional violation and (2) that a

municipal policy or custom was the moving force behind the constitutional deprivation.

*Jiron v. City of Lakewood,* 392 F.3d 410, 419 (10th Cir. 2004).

An official policy or custom may take one of the following forms:

(1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions – and the basis for them – of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.

*Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (quotation and

alteration marks omitted).

Whatever species of policy or custom is alleged,

[t]he plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

*Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (1997) (emphasis in

original).

Also, at least for claims of inadequate hiring, training, or other supervisory

practices, the Tenth Circuit has explained,

a plaintiff "must demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Brown*, 520 U.S. at 407. "'Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action,'" *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quoting *Brown*, 520 U.S. at 410) (internal quotation marks and brackets omitted), as "[a] less stringent standard of fault for a failure-to-train claim 'would result in de facto respondeat superior liability on municipalities,'" *id.* at 62 (quoting *City of Canton v. Harris*, 489 U.S. 378, 392 (1989)). "The

deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998). "In most instances, notice can be established by proving the existence of a pattern of tortious conduct." *Id.* Deliberate indifference "may be found absent a pattern of unconstitutional behavior" only in "a 'narrow range of circumstances'" where "a violation of federal rights is a 'highly predictable' or 'plainly obvious' consequence of a municipality's action or inaction." *Id.* at 1307–08 (quoting *Brown*, 520 U.S. at 409).

*Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1284 (10th Cir. 2019)

As to the unreasonable seizure claim, Plaintiff alleges as follows:

Defendant City of Greeley engaged in the aforementioned unconstitutional conduct, with deliberate indifference to the rights of its citizens such as Mr. Trevizo-Gonzalez by failing to train, supervise, or discipline police officers within the Greeley Policy Department, including Defendant Brunnemer, so as to prevent them from unlawfully depriving citizens of their Fourth Amendment rights to not be subjected to unlawful searches and seizures under circumstances such as those presented herein.

(Dkt. #35 ¶ 55.) These allegations are conclusory and vague. His *Monell* claim for

excessive force is similarly vague:

65. Defendants were engaged in these acts [of excessive force] pursuant to formal or informal custom, policy and practice of the City of Greeley, which encourages, condones, tolerates, and ratifies the use of excessive force in the seizure and arrest of its citizen by law enforcement officers.

66. This formal or informal custom, policy, and practice of the City of Greeley is so permanent and well settled as to constitute custom by high ranking officers, the Chief of Police, and City of Greeley employees with final policymaking authority.

67. Defendant City of Greeley engaged in the aforementioned unconstitutional conduct, with deliberate indifference to the constitutional rights of its citizens such as Mr. Trevizo-Gonzalez by failing to train, supervise, or discipline police officers within the Greeley Police Department, including but not limited to Defendants Brunnemer and Douglas, so as to prevent them from employing objectively unreasonable excessive force and unlawfully depriving citizens of their Fourth Amendment right to be secure in their persons against unreasonable seizures.

(*Id.* ¶¶ 65–67.)

A party asserting a *Monell* claim must, *at a minimum*, plead sufficient facts to identify the unconstitutional custom or policy that was promulgated and the means by which that custom or policy caused the constitutional violation. In other words,

> [t]he plaintiff cannot simply allege that there is a policy in place, but, rather, must plead facts that, if true, would give rise to a plausible inference that such a policy exists. With formal or written policies, satisfying this pleading standard is easy; the plaintiff can simply allege what the policy is and where it is codified. With informal, unwritten policies, customs, or practices, the plaintiff can plead either a pattern of multiple similar instances of misconduct—no set number is required, and the more unique the misconduct is, and the more similar the incidents are to one another, the smaller the required number will be to render the alleged policy plausible— or use other evidence, such as a police officers' statements attesting to the policy's existence. The Tenth Circuit has not explicitly held that to be pleading requirements, but they have implied that district courts should analyze policies, practices, or customs under *Monell* as "legal conclusions" at the pleading stage—must evidence factual support, rather than conclusorily alleged—and not "facts" in and of themselves, to be taken as true at face value.

*Abila v. Funk*, No. CV 14-1002 JB/SMV, 2016 WL 9021834, at *17 (D.N.M. Dec. 14, 2016). Here, the allegations recited above regarding unconstitutional customs or policies maintained by City of Greeley are entirely conclusory. The City of Greeley is entitled to dismissal of Plaintiff's *Monell* claim.

## IV. RECOMMENDATION

It is hereby **RECOMMENDED** that Defendants' Motion to Dismiss Second Amended Complaint (Dkt. #37) be **GRANTED IN PART** and **DENIED IN PART**. Specifically, Plaintiff's First Claim for Relief for Unreasonable Seizure should proceed against Defendant Brunnemer only. All other claims should be dismissed.

**NOTICE: Pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b)(2), the parties have fourteen (14) days after service of this recommendation to serve**

and file specific written objections to the above recommendation with the District Judge assigned to the case. A party may respond to another party's objections within fourteen (14) days after being served with a copy. The District Judge need not consider frivolous, conclusive, or general objections. A party's failure to file and serve such written, specific objections waives *de novo* review of the recommendation by the District Judge, *Thomas v. Arn*, 474 U.S. 140, 148-53 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).

Dated:     April 19, 2023                    _____
           Denver, Colorado                 N. Reid. Neureiter
                                             United States Magistrate Judge